# United States District Court
# Northern District of Indiana

| | |
|---|---|
| CHARLES HENRY CHRISTIAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 3:09-CV-131 JVB |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Charles Henry Christian, a *pro se* prisoner, was convicted of rape and criminal confinement in Marion County Superior Court. *State v. Christian*, 49G06-0311-FA-20256. He filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence.

**FACTS**

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Christian's burden to rebut this presumption with clear and convincing evidence. *Id.* The Indiana Court of Appeals set forth the facts surrounding Christian's offenses as follows:

> On September 24, 2003, Defendant Charles Christian entered the home of John Stewart . . . At Mr. Stewart's home was his eighteen-year-old son, Chad Stewart, and the victim, Angelique McBride, who is the ex-girlfriend of Charles Christian. While Mr. Christian was in the home, he went to the bedroom occupied by John Stewart and Angelique McBride. He then put handcuffs on John Stewart and bound his feet leaving him in the bedroom where he was unable to get out of the bedroom due to being confined with handcuffs and the bindings on the leg. At the time he bound Mr. Stewart he was armed with a handgun on his waistband, and the defendant went upstairs and bound Chad Stewart with handcuffs and bindings on his feet thereby restricting his movement as well. And at the time he was once again armed with a handgun, which was on his waistband. The Defendant then

1

proceeding downstairs where he went into the living room with the victim Angelique McBride while he had the handgun still in his waistband and then later within reach of him, he then had sexual intercourse with Angelique McBride against her will.

*Christian v. State*, No. 49A04-0408-CR-422 (Ind. Ct. App. Apr. 26, 2005), slip op. at 2.

Christian was charged with criminal deviate conduct, rape, burglary, three counts of criminal confinement, and two counts of pointing a firearm. *Id.* at 3. On June 22, 2004, Christian signed a plea agreement wherein he pled guilty to rape and two counts of criminal confinement in exchange for dismissal of the remaining counts. *Id.* In the agreement, the state recommended an aggregate sentence of 51 years in prison with ten years suspended. *Id.* A change of plea hearing was subsequently held, and an issue arose concerning whether Christian would have to be placed on probation if a suspended sentence was imposed.[1] The following colloquy took place:

> THE COURT: The plea in and of itself does not contemplate, doesn't speak to probation.
>
> [Defense counsel]: We've dealt with that. No probation. He's doing an extra year executed in lieu of any probation.
>
> THE COURT: Okay.
>
> [The prosecutor]: Mr. Christian will be sixty-five years old approximately when he gets out. Ms. Korobov has agreed that he does not have to do probation.
>
> THE COURT: Okay. It will be—I just want to make this clear for the record. I'll have to put him, the ten years will really be just a ten-year insurance policy that he not commit any other crimes, correct?

---

[1] Indiana law provides, "[W]henever the court suspends a sentence for a felony, it shall place the person on probation under IC 35-38-2 for a fixed period to end not later than the date that the maximum sentence that may be imposed for the felony will expire." IND. CODE § 35-50-2-2(c).

2

|                      |                                                                                                                                                                                                                                                                                                                                                                              |
| -------------------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| [Defense counsel]:   | Correct.                                                                                                                                                                                                                                                                                                                                                                     |
| [The prosecutor]:    | Right.                                                                                                                                                                                                                                                                                                                                                                       |
| THE COURT:           | All right. I'll have to—you understand that's the point of that ten-year suspended sentence, Mr. Christian?                                                                                                                                                                                                                                                                  |
| MR. CHRISTIAN:       | Yes.                                                                                                                                                                                                                                                                                                                                                                         |
| THE COURT:           | I'm going to have to figure out how to effectuate that in terms of making that valid, and it may be a day of non-reporting probation or something like that, but that will be probably how I do it, okay? Do you understand what I just said?                                                                                                                                |
| MR. CHRISTIAN:       | Yes, I do.                                                                                                                                                                                                                                                                                                                                                                   |
| THE COURT:           | The law requires some probation if there's a suspended sentence and we understand, I understand what this is dealing with. Frankly it could also deal with the no-contact order, which the court has authority to order that you can't have any contact with Ms. McBride while you're incarcerated and if you were to violate the order while incarcerated the court could impose that suspended sentence, and I wanted to get that on the record before we completed this hearing; do you understand that? |
| MR. CHRISTIAN:       | Yes.                                                                                                                                                                                                                                                                                                                                                                         |
| THE COURT:           | All right. Then the court does find that the defendant understands the possible sentence and fines under the plea, that his plea was freely and voluntarily made and that there is a factual basis for it and the court will accept the plea and find the defendant guilty . . . .                                                                                          |

*Christian v. State*, No. 49A04-0801-PC-24 (Ind. Ct. App. Jul. 29, 2008), slip op. at 3-4.

On July 7, 2004, Christian filed a *pro se* motion to withdraw his guilty plea, arguing that his plea had not been knowing and voluntary. *Christian*, No. 49A04-0408-CR-422, slip op. at 3. *Id.* After a hearing, the trial court denied the motion. *Id.* Thereafter, in accordance with the plea agreement, the trial court sentenced Christian to a total of 51 years in prison, with ten years

3

suspended, and a single day of non-reporting probation. *Id.* Christian appealed, and the appellate court affirmed. *Id.* at 4-7. Christian did not file a petition to transfer with the Indiana Supreme Court. (*See* DE 8-2.)

On August 30, 2005, Christian filed a *pro se* petition for post-conviction relief, arguing that he received ineffective assistance of counsel during the plea process and that his guilty plea was not knowing and voluntary. *Christian*, 49A04-0801-PC-24, slip op. at 4. Following a hearing, the trial court denied the petition. *Id.* at 4-5. Christian appealed, and the Indiana Court of Appeals affirmed. *Id.* at 10. The Indiana Supreme Court denied Christian's petition to transfer. (DE 8-4.)

On March 25, 2009, Christian filed this federal petition raising four claims.[2] (DE 1.) In claims one and two, he claims that trial counsel was ineffective. (*Id.* at 5.) In claims three and four, he claims that his guilty plea was not knowing and voluntary. (*Id.* at 6.)

## ANALYSIS

This petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant

---

[2] The Court notes that Christian did not file a traverse in support of his petition even though he was granted two lengthy extensions—a total of approximately six months—in which to do so. (*See* DE 11, 16.) His traverse was due on February 14, 2010, and to date no traverse has been received. Christian's claims are minimally developed in the petition and are somewhat difficult to comprehend; however, the Court has liberally construed the petition in attempting to discern Christian's claims.

4

an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim---
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the unreasonable application clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). To warrant relief under this clause, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id*.

### A. Ineffective Assistance Claims

In claims one and two, Christian raise allegations of ineffective assistance of trial counsel in connection with his guilty plea. In claim one, Christian asserts that trial counsel should have challenged the court's imposition of one day of non-reporting probation because he never agreed

5

to that provision. (DE 1 at 5.) In claim two, Christian asserts that counsel was ineffective because she did not support his efforts to withdraw his guilty plea. (*Id.*)

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 130 S. Ct. 13, 16 (2009). The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.*

In determining whether counsel's performance was constitutionally deficient, the Court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, the petitioner must establish a reasonable probability that if not for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Where it is expedient to do so, a court may resolve an ineffective assistance claim solely on the prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need to "grade counsel's performance." *Strickland*, 466 U.S. at 697; *see also Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

6

Here, in rejecting Christian's ineffective assistance claims, the Indiana Court of Appeals properly identified *Strickland* as the governing standard, and determined that Christian failed to establish that he was prejudiced by counsel's performance in connection with his guilty plea. *Christian*, 49A04-0801-PC-24, slip op. at 7-9. This determination was not unreasonable in light of the record.

The record reflects that there were at least three eyewitnesses to Christian's offenses, including his ex-girlfriend, who knew his identity. If he had gone to trial and had been convicted, he would have faced a lengthy sentence. He was charged with multiple offenses, including two Class A felonies, each carrying a 50-year maximum sentence, and four Class B felonies, each carrying a 20-year maximum sentence. (*See* DE 7, Change of Plea Hearing Tr. at 8.) Additionally, the state was planning to add a habitual offender charge because of Christian's six prior felony convictions, subjecting him to an even longer sentence.[3] *Christian*, No. 49A04-0408-CR-422, slip op. at 5. Against this backdrop, Christian's counsel was able to negotiate a plea agreement which resulted in dismissal of five of the eight counts of the indictment, including one of the Class A felony charges, and a sentence that was substantially lower than Christian might otherwise have received.

During plea negotiations, Christian made it clear that he did not want to undergo a lengthy period of probation in which he would have to report to a probation officer and his personal freedoms would be restricted. *Christian*, No. 49A04-0801-PC-24, slip op. at 5. As a result, the parties reached agreement that Christian would serve an additional year in prison in lieu of a standard probationary term. *Id.* The record shows, however, that Christian knew about

---

[3] If a defendant is found guilty of being a habitual offender, he is subject to an enhanced sentence of up to 30 years. IND. CODE § 35-50-2-8(h).

7

and assented to the requirement that he serve one day of non-reporting probation in order to effectuate the parties' agreement regarding the suspended sentence. During the plea hearing, the trial court expressly advised Christian that by law some period of probation had to be imposed if a portion of his sentence was going to be suspended, and indicated an intention to impose the least restrictive option, one day of non-reporting probation. *Id.* at 3-4. The court asked Christian if he understood this requirement, and Christian responded that he did. *Id.* at 4. At no time did Christian object or express any concerns about this requirement. (DE 7, Change of Plea Hearing Tr. at 1-19.)

Christian appears to argue that if he had known about this requirement, he would have rejected the plea offer and gone to trial. (DE 1 at 5.) Such an argument is nonsensical since, as discussed above, Christian knew at the time of the plea hearing that he would be subject to one day of non-reporting probation and yet he went ahead with the plea.[4] Moreover, "[a] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009) (internal citation omitted). "The defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Id.* Here, the objective evidence indicates that Christian, and any other defendant, would have accepted the favorable plea agreement in light of the evidence and the potential penalties he was facing. Christian received the benefit of the plea agreement when the trial court sentenced him to the prison term agreed to by the parties and the state dismissed the remainder of the charges against him. The imposition of a single day

---

[4] At the evidentiary hearing held on Christian's post-conviction petition, Christian's trial counsel testified that she could not specifically recall whether she had discussed this requirement with him prior to the hearing. She nevertheless testified that she was aware of the law at the time and understood the trial court's admonitions to Christian on this issue to be an accurate statement of the law. (DE 7, Post-Conviction Hearing Tr. at 12-13.)

8

of non-reporting probation was symbolic at best, since it imposed no additional obligations on him. *Christian*, No. 49A04-0801-PC-24, slip op. at 6. Furthermore, if counsel had objected to the imposition of a single day of non-reporting probation, a portion of Christian's sentence could not have been suspended, which would have required him to serve an additional ten years in prison. In summary, Christian has not established that he was prejudiced by his attorney's performance in connection with the plea agreement.

In claim two, Christian argues that counsel improperly undermined his efforts to withdraw his guilty plea. (DE 1 at 5.) As with the first claim, Christian has failed to establish prejudice. Under Indiana law, a guilty plea may not be withdrawn as a matter of course, but may in the trial court's discretion be withdrawn to "correct a manifest injustice." IND. CODE § 35-35-1-4(c)(3). In his *pro se* motion to withdraw his guilty plea, Christian stated that after having "time to reflect," he had changed his mind and wished to proceed to trial. (DE 7, Appellant's App. at 151.) He asserted that his plea was not voluntary because he had been unduly pressured by the fact that the prosecutor intended to add a habitual offender charge if he did not plead guilty. (*Id.* at 150-54.) He further stated that his counsel had pressured him to plead guilty by not giving him enough time to think over the state's offer and not properly preparing for trial. (*Id.* at 151.)

A hearing was held on the motion, and Christian's counsel disagreed that she had unduly pressured him to plead guilty or failed to prepare for trial, but she acknowledged that Christian did not have much time to consider the plea offer in light of the deadline conveyed to her by the prosecutor. (DE 7, Motion Hearing Tr. at 24-26.) Christian was permitted to address the court directly about the reasons why he wanted to withdraw his plea, and after considering his

9

statements, the trial court denied his motion. (*Id.* at 26-30.) Christian challenged this ruling on direct appeal and the appellate court affirmed. *Christian*, No. 49A04-0408-CR-422, slip op. at 4-5.

As the appellate court observed, Christian made repeated statements during the change of plea hearing that directly contradicted the assertions in his *pro se* motion. *Id.* Specifically, Christian testified under oath at the change of plea hearing that he was satisfied with his attorney's performance, including the preparation she had done on the case, and that he was voluntarily pleading guilty without any undue influence or coercion. (DE 7, Motion Hearing Tr. at 3, 4-19.) His later statements that he felt "pressured" when he entered the guilty plea would not constitute a basis to withdraw the plea under Indiana law. *See Davis v. State*, 770 N.E.2d 319, 327 (Ind. 2002) (defendant could not withdraw plea simply because he felt "tired, confused, and upset" at the time he entered the plea). Moreover, the fact that the prosecutor had threatened to add a habitual offender charge would not constitute coercion under Indiana law. "The fact that [the defendant] may have been fearful upon receipt of the information of what he faced if he stood trial . . . cannot be considered as coercion as long as the information is factual." *Watson v. State*, 526 N.E.2d 701, 703 (Ind. 1988). As the appellate court observed, the prosecutor's statements about adding a habitual offender charge were not simply idle threats: there was ample basis to add such a charge since Christian had six prior felony convictions. *Christian*, No. 49A04-0408-CR-422, slip op. at 5-6.

Therefore, even assuming counsel had filed a motion to withdraw the guilty plea on Christian's behalf, or had taken additional steps to support his *pro se* motion, there is nothing in the record to indicate that grounds existed for Christian to withdraw his plea. Furthermore, had

Christian been successful in withdrawing his plea and had gone to trial, in light of the evidence and the potential penalties he faced, it is likely he would have received a far longer sentence than he received under the plea agreement. Christian has not shown that he was prejudiced by his attorney's performance in connection with the motion to withdraw his guilty plea.

In summary, the state court's resolution of Christian's ineffective assistance claims was not unreasonable, and accordingly, claims one and two are denied.

### B. Guilty Plea Claims

In claims three and four, Christian asserts that his guilty plea was not knowing and voluntary because he never agreed to the imposition of probation. (DE 1 at 6-7.) When a defendant pleads guilty, he waives certain constitutional rights. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The Indiana Court of Appeals determined that Christian's guilty plea was knowing and voluntary under this standard. *Christian*, No. 49A04-0801-PC-24, slip op. at 9. This determination was not unreasonable in light of the record.

As recounted above, the record reflects that Christian was fully advised by the trial court at the plea hearing that in order to effectuate the parties' agreement regarding the suspended sentence, some period of probation had to be imposed. (DE 7, Change of Plea Hearing Tr. at 16-17.) The trial court advised Christian that she would likely impose a single day of non-reporting probation. Christian stated on the record that he understood this provision and raised no objection. (*Id.* at 1-19.) The remainder of the hearing transcript reveals that the trial court fully

11

advised Christian about the rights he was giving up by pleading guilty and the penal consequences he faced. (*Id.*) The court questioned him repeatedly about the voluntariness of the plea, asked him whether he had been threatened or coerced into pleading guilty, and asked him several questions to determine whether he was satisfied with his attorney's performance. (*Id.*) Christian responded that he understood the plea, the charges, and the penal consequences, was satisfied with his attorney's performance, and stated that he was pleading guilty because he believed it was in his "best interests" to do so. (*Id.* at 3, 4-19.) Based on the record, the state court's determination that Christian's guilty plea was knowing and voluntary was not unreasonable and, accordingly, claims three and four are denied.

### C. Certificate of Appealability

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons explained above, Christian has failed to make a substantial showing of the denial of a constitutional right. There is nothing before the Court to indicate that reasonable jurists could debate the outcome of this petition or that there is a reason to encourage Christian to proceed further. Accordingly, the Court will not issue a certificate of appealability.

For these reasons, the petition (DE 1) is **DENIED**, and the Court declines to issue a certificate of appealability.

**SO ORDERED** on March 23, 2010.

  s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division